McFarland *v.* Miller.

4-8243                                    203 S. W. 2d 404

Opinion delivered June 30, 1947.

*A. R. Cheatham,* for appellant.

*W. H. Kitchens, Jr.,* and *Wade Kitchens,* for appellee.

Smith, J. On Aug. 7, 1913, J. L. McFarland conveyed to Martha, his wife, an 80-acre tract of land and three tracts of 40 acres each, one of the latter being the SW¼ of the SW¼ of section 11, township 16 south, range 19 west. Mrs. McFarland died intestate May 30, 1916, leaving her husband, two adult children, and six minor children. McFarland and the minor children continued to live on the said land, the exact part thereof not being shown, until some time in 1923, when he and all the children except a son named Edward, moved to Stephens, Arkansas, a town some three miles away. Edward continued to live on the land until 1927.

On February 23, 1921, Mr. McFarland, as guardian of the minor children, obtained an order from the Probate Court authorizing him to mortgage the 80-acre tract

of land, for the sum of $1,000, for the education and maintenance of his wards.

The indebtedness thus secured having matured, and not having been paid McFarland, as guardian, obtained on January 11, 1924, a Probate Order authorizing him to mortgage the 80-acre tract and the SW¼ of the SW¼ of section 11 in addition for the purpose of paying the 1921 mortgage above referred to, in the sum of $1,000, and an additional sum of $500 for the education and maintenance of his said wards. Five of the McFarland heirs who were then of age joined in the execution of the mortgage and signed the $1,500 note which it secured. The loan was made by R. B. Allen and the note which the mortgage secured was payable to Allen's order.

The mortgage empowered Allen to sell the land there described upon default of payment, at public sale, for cash, upon 20 days notice of the sale and to convey title to the land to the purchaser at such sale, by a deed the recitals of which should be taken as *prima facie* true.

The note last mentioned was not paid at its maturity and the SW¼ of the SW¼ of section 11 was sold pursuant to the power of sale contained in the mortgage, on April 8, 1927, to J. M. Miller. It does not appear from the record before us whether the 80-acre tract was also sold, or if so to whom. Miller bid $500 for the 40-acre tract, which he paid in cash to Allen, and received from Allen a deed dated April 8, 1927, this being the date of the sale.

The deed from Allen, as mortgagee, to Miller recited the authority under which the sale had been made and that the sale had been made in compliance with and in conformity to the provisions and requirements of the mortgage for more than three-fourths of its appraised value.

According to the undisputed testimony, Miller took possession of the land the day after the sale and has since been in the sole and exclusive possession thereof, at all times claiming to be the owner. There was an old

fence which he repaired. He caused this land to be assessed in his name, and paid all taxes in his own name up to and including the year 1946. He used a portion of the land for a pasture and began clearing the balance the year he purchased, and he cleared and put into cultivation 20 acres of this land. There was an old house unfit for occupancy, which he tore down and used for his own purposes, such of the lumber as had value. The house was a one-room building with a shed room, the roof of which had fallen in. Miller took possession of the land as owner, and no one questioned his right to do so, and he remained in the exclusive possession for 19 consecutive years without having his ownership questioned by anyone.

On August 20, 1946, Miller filed this suit against the McFarland heirs to quite his title to the land, in which he alleged in substance the facts herein recited. A number of the heirs had lived within a few miles of this property since Miller took possession of the land, but others had become non-residents of the state. An attorney was appointed for the non-resident defendants, and a warning order was published. The attorney appointed for the non-resident defendants wrote the non-residents advising them of this suit, and from E. F. McFarland, one of the heirs, he received a letter containing the following statement: "As the eldest of the heirs of Martha and J. L. McFarland I feel safe in saying that we have no claims on the land, whatever, and consider Mr. J. M. Miller a valued friend of the family, and please give him our regards. I will be glad to assist any way possible." This writer was one of the adult children who had joined in the execution of the mortgage to Allen.

The heirs filed an answer and cross complaint, in which they admitted Miller's continuous possession since April 9, 1927, but they alleged that Miller during all these years was a mortgagee in possession. The basis of this allegation is the contention that the original mortgage was void as the Probate Court was without jurisdiction to authorize the mortgage and that the fore-

closure proceedings were void, in that it was not conducted as required by the power of sale.

The case of *Flannigan* v. *Beavers,* 172 Ark. 28, 287 S. W. 755, is quite similar in several respects to the instant case, in that questions were raised there which are presented here, but we found it unnecessary to decide these questions in that case, and we find it unnecessary to decide them here. Indeed appellant says, ''There is only one question in this case, and that is whether or not Miller is a mortgagee in possession. If he is not, then an affirmance is in order; if he is, then the decree of the trial court should be reversed.'' This contention is upon the theory that the power of sale was defectively employed and that Miller, the purchaser at the foreclosure sale, became a mortgagee in possession and the statute of limitations did not run in his favor while that relationship existed. The court confirmed the title as prayed, holding that the heirs were barred by the statute of limitations, by laches and by estoppel; and from that decree is this appeal.

The authorities on the subject were reviewed by Judge Wood in the case of *Norris* v. *Scroggins,* 175 Ark. 50, 297 S. W. 1022, and he there quoted and approved the following statement of the law from 2 Jones on Mortgages, page 881, § 1152 (page 964, § 1474 *ibid* 8 ed.) : ''Where a mortgagee enters into possession of the mortgaged premises under a void foreclosure, he is presumed to hold as mortgagee in possession, and limitation does not run in his favor, or in favor of his grantee, against a suit by the mortgagor. . . . The mortgage relation still continues between the purchaser at such void sale and the owner of the equity of redemption, the right of redemption continues, and the statute of limitations does not begin to run against the right until actual notice is given such owner by the party in possession under such void sale, that he claims to hold in some other right than that of mortgagee or assignee of the mortgage, or he clearly makes it known by his acts that he holds adverse to the mortgage.''

Here the facts are undisputed that Miller took possession as owner, and for 19 years occupied the land in that capacity, the last 12 years of such occupancy being after the youngest McFarland heir became of age, and there appears no doubt that the heirs were apprised of this adverse holding. In other words, the fact is clearly established that Miller was holding adversely to the mortgage and the facts above recited must have apprised the heirs that Miller was holding adversely to the mortgage, and not as mortgagee in possession. During Miller's long occupancy no one of the heirs had ever asked an accounting to determine whether the rents had sufficed to pay the mortgage debt.

The holding in the Flannigan case, *supra,* applies here, for the heirs in this case, as in that one, must have known that the purchaser at the foreclosure sale was holding adversely to the mortgage. The court below so found and the testimony not only supports that finding but precludes any other, and the decree upholding the plea of limitations must be sustained. As stated, the court also found that appellants were barred by laches and estoppel, but it is unnecessary to consider those questions. The decree is affirmed.